JONATHAN J. CUNNINGHAM, Plaintiff in Error, *v.* JOHN DORAN *et al.*, Defendants in error.

### ERROR TO PEORIA.

Where a party foreclosed a mortgage and ten years after assigned the decree of foreclosure, the land not having been sold, and where a hostile title had arisen through the omission to record a deed which perfected the title in the mortgagor, and the assignee sought to revive the decree of foreclosure, and to remove the shadow fraudulently obtained upon the mortgaged land: It was *held* he had a right so to do, by making the proper parties, so that the mortgaged premises might produce their value when brought to sale under the decree.

THIS was a bill in chancery filed in the Peoria Circuit Court, March term, 1852, by complainant against defendants.

The bill alleges that, on the 7th day of August, A. D. 1838, John Doran, being the owner in fee simple of N. W. 32, 11 N., 7 E., in Peoria county, executed a mortgage on said tract of land to one Stephen Lee, to secure the payment of $300 in one, two and three years, which notes were given to Lee in payment for said tract of land. The mortgage was duly assigned by Lee to John Smith, on the 18th of August, 1838, and the assignment and mortgage were both recorded in Peoria county on the 26th day of August, 1839. That Lee

25

has no interest in the land or notes, but has transferred the same.

That on the 25th December, 1841, Smith filed his bill in chancery in the Peoria Circuit Court to foreclose the mortgage. Due service of the summons was made on Doran, and, at the October term, 1841, a decree was rendered against him for $415. If not paid in ten days, land to be sold. The decree appointed a commissioner to sell, which decree remains in full force and unpaid.

That, on the —— day of July, 1851, Smith, the complainant in that case, assigned said decree in· writing to John J. Cunningham, the complainant in this case, which said assignment was duly entered on the record.

That, after the rendition of said decree, the commissioner removed out of the state, and still is a resident of the city of Washington, D. C., so that complainant cannot proceed to enforce his decree.

That Doran has left the state.

That the land, N. W. 32, 11 N,, 7 E., was patented to Jonathan Emmerson, October 6th, 1817.

On the 21st December, 1817, Emmerson conveyed to Joseph Hunt, on the back of the patent, and the patent and conveyance were both recorded in Madison county, July 7, 1818, the land then being in that county.

April 4, 1836, Hunt conveyed to William Butler by deed, which was recorded in Peoria county, April 8th, 1851. This deed was acknowledged June 30th, 1851, and re-recorded August 6th, 1851, in Peoria county.

Butler conveyed October 23d, 1837, to James P. Harvey; recorded April 8th, 1851.

Harvey conveyed, February 3, 1838, to Stephen Lee, and Lee conveyed to John Doran, August 7, 1838. The two last deeds were recorded May 18th, 1839.

John Smith, supposing the decree vested a title in him, sold and conveyed to Caleb North, March 13, 1845; recorded December 2d, 1845.

North conveyed to John Bryner by deed, July 10th, 1845; recorded December 2d, 1845.

Bryner and wife conveyed to complainant December 3d, 1850; recorded July 21st, 1851.

Bill further states, that complainant was a *bona fide* purchaser, in good faith, and supposed he had the fee simple.

That in June, 1848, one acre of the land was sold for taxes to John Elting, and redeemed by John Bryner, June 18th, 1850, who paid taxes for the years 1848 and 1849. Complainant paid the taxes for 1850.

. Said bill further presents, that on the 22d day of July,

A. D. 1850, George C. Bestor, one of the aforesaid defendants, filed in the recorder's office of Peoria county, an instrument under seal, purporting to be a deed executed by the aforesaid Joseph Hunt, Jr., to Alexander Kursheet, of the city of New York, dated April 19th, 1849, for the same premises. That consideration paid to said Hunt was one dollar; that said Kursheet did not pay anything at all for said land to said Hunt, and that said land was then worth eight hundred dollars; that one Peter L. Hoes, of the city of New York, ascertained by means of abstract of titles kept in his office for said purpose; that there was no title on record from said Hunt to said Butler. He, therefore, proposed to purchase said land from said Hunt, and pay him therefor the sum of ten dollars, which sum Hunt agreed to accept, and pretended to convey the land to the aforesaid Kursheet; that at the time of the conveyance and sale to Hoes, Hunt distinctly informed Hoes that he did not know that he had any title to said land; that he formerly owned two quarter sections of land in Illinois, one of which he had conveyed to William Butler, and the other he had not conveyed; that if Hoes would run the risk, he would quit-claim his interest for ten dollars; that said Hoes then knew that said Hunt then had no title in said premises, and that said decree was a valid and subsisting lien on the same; and further, that Hoes was then an acting commissioner of deeds, and drew up the deed to Kursheet, and took the acknowledgment thereof; that Kursheet never had any interest in the premises, except as before stated; that he never knew anything about the land, nor Hunt, nor the conveyance from Hunt, until the same was presented to him by Hoes; that Kursheet has heretofore been assisting Hoes in like operations, and has been fully paid for his trouble, and had actual and constructive notice of the several facts and circumstances hereinbefore alleged.

Bill further charges that, in the fall of 1850, or in the spring of 1851, Hoes sold said titles, so acquired by Kursheet, to George C. Bestor and James L. Riggs for a horse and buggy, but when and upon what terms said sale was made complainant was not informed, as no deed, or agreement, or contract, or bond, or other instrument appears on record in Peoria county, and that said Hunt, Kursheet and Peter L. Hoes have now no interest in the premises; that Riggs, in July, 1851, assigned his interest to said Bestor, and has now no interest in the same; that said Bestor and Riggs both knew of the title under which complainant holds; that long before they purchased said pretended title of Hoes, they had actual and constructive notice of the existence of the several deeds from the patent down to complainant, of the mortgage from Doran to

Lee, of the assignment thereof to Smith, of the proceedings in foreclosure, and the rendition of the decree before mentioned; that in June, 1848, one hundred and fifty acres of said land were sold by the sheriff of Peoria county to John Elting for the taxes of 1847; that on the 18th of June, 1850, John Bryner, who had conveyed said land to complainant by deed of December 3d, 1850, recorded in Peoria county February 21st, 1851, redeemed said land, and at the same time paid the taxes for the years 1848 and 1849; and that before said redemption by said Bryner, and before said Bestor and Riggs had said title through Kursheet, both proposed to purchase said title of said Bryner; that said Bestor acquired his title to said premises after most of the deeds conveying the same to complainant were placed on record of Peoria county, and had actual and constructive notice of the same.

Bill further presents, that George Debord is now in possession of said premises under pretense of purchase from said Bestor, but charges that Debord also had actual and constructive notice of said proceeding in chancery, rendition of final decree therein, and of the existence of the several deeds conveying said premises to complainant; and that said Bestor, Hoes, Kursheet and Debord have fraudulently combined and confederated to cheat and defraud said complainant of his said decree; that said Debord has not paid for said land, but bought the same on speculation, and is indemnified, and that John Elting still claims an interest in the premises. Complainant cannot further state the claim of title set up by Bestor and Debord, as no written evidence of their title has ever been filed, except said deed from Hunt to Kursheet; but charges that he is sole owner of the said decree, and in equity said decree is a valid and subsisting lien on said premises, and, therefore, prays the court to aid him, in this behalf, to revive said decree and the lien of the same on the premises, and that, for that purpose, a writ of subpœna may be directed to the said Doran, Smith, Bestor, Elting and Debord, that they may answer all things therein contained; that said decree may be so revived, and some suitable person be appointed to sell said premises and apply proceeds to payment of amount due on said decree, and costs and expenses of complainant in that behalf expended, and grant such other relief as equity and good conscience may require.

To the aforementioned bill, on the 16th day of September, A. D. 1853, the said defendants, Bestor and Debord, filed a demurrer, upon which the court ordered that the demurrer be sustained, and that complainant's bill as to them be dismissed, etc.

And afterward, to wit: September 24th, 1853, "the court PETERS, Judge, presiding, does find, *inter alia*," that there is due on said decree the sum of $705.80, and orders same decree to be revived in favor of said complainant; and unless said Doran pay the above sum with costs, and within twenty days from rendition of said revival, that George Blakely be appointed a special commissioner to sell the same; and said Doran making default therein, the said premises were sold, as appears by report of said commissioner, approved by said court to complainant for the sum of $747.91, on the 14th day of December, A. D. 1853, and gave him a certificate for the same.

H. GROVE and H. M. WEAD, for Plaintiff in Error.

N. H. PURPLE, for Defendant in Error.

CATON, J. We think the demurrer filed by Bestor and Debord should have been overruled. At the time the original decree was rendered, nearly sixteen years ago, Doran, the mortgagor, had a perfect title to the land, but one of the mesne conveyances, through which he derived title, had not been recorded. Eight years after the decree was rendered, Hunt, the grantor, in that unrecorded deed, made another conveyance of the same premises to one Kursheet, which deed was put upon record before the first deed from Hunt, under which the mortgagor held his title, was recorded. The bill further shows that Kursheet had no interest, in fact, in the conveyance to him, but took it as trustee for Hoes, to whom he soon after conveyed the land, and that in 1851, Hoes conveyed to Bestor and Riggs, and that afterward Riggs assigned his interest to Bestor. The bill further shows that Debord now has possession of the land, claiming title under a purchase from Bestor. The bill shows that all the parties, who have ever held the title under the second deed executed by Hunt, had notice of Doran's title, his mortgage to Lee, and of the foreclosure of that mortgage. The bill prays that the decree of foreclosure may be revived; that another commissioner may be appointed to execute it, and for general relief.

It is unnecessary now to inquire, whether it was necessary to revive the original decree for the purpose of having it executed, so far as the rights of the mortgagor and those claiming under him, were concerned. Since that decree was rendered, a hostile, fraudulent title has sprung up, which stands in the way of the execution of that decree, which the assignee of the mortgagee and of the decree has a right to remove out of his way, for which purpose the statements of this bill, with the·

general prayer for relief, are sufficient. If Bestor and Debord are *bona fide* purchasers, and are, in fact, entitled to the land unincumbered by the mortgage and unembarrassed by the decree, they should have an opportunity of showing it, before any further steps are taken under the decree toward its execution; but if, on the other hand, their title is fraudulent, as the bill alleges, the complainant is entitled to show it before the decree is executed, that the land may go into market with a clear title, that it may bring its full value. That is due as well to Doran, the mortgagor, as to the complainant. We are of opinion that the court erred in sustaining the demurrer of Bestor and Debord, and that portion of the decree must be reversed and the suit remanded.

*Decree reversed.*